1
2
3
4
5
6                              IN THE UNITED STATES DISTRICT COURT
7
8                              FOR THE NORTHERN DISTRICT OF CALIFORNIA

9   ARTHUR T. SAMPLE,
10              Plaintiff,                          No. C 07-04814 JSW
11      v.
                                                   **ORDER GRANTING**
12  MICHAEL J. ASTRUE,                             **PLAINTIFF'S MOTION FOR**
    Commissioner, Social Security                  **SUMMARY JUDGEMENT AND**
13  Administration,                                **DENYING DEFENDANT'S**
                                                   **MOTION FOR SUMMARY**
14              Defendant.                          **JUDGMENT**
    _____/
15

16          Now before the Court is Plaintiff Arthur T. Sample's ("Sample") Motion for Summary

17  Judgement and the Cross-Motion for Summary Judgement filed by the Commissioner of the Social

18  Security Administration ("Commissioner").  Pursuant to Civil Local Rule 16-5, the motions have

19  been submitted on the papers without oral argument.  Having carefully reviewed the administrative

20  record and considered the parties' papers and the relevant legal authority, and good cause appearing,

21  the Court hereby GRANTS Sample's Motion for Summary Judgement, REMANDS this case, and

22  DENIES the Commissioner's Cross-Motion for Summary Judgment.

23                                          **BACKGROUND**

24          Sample brings this action pursuant to 42 U.S.C. § 405(g) and § 1383(g) to obtain judicial

25  review of a final decision of the Commissioner denying his request for Social Security benefits.  At

26  the time of his hearing, Sample was a 54 year old man, formerly employed as a plumber for 27

27  years.  (Administrative Record ("AR") at 285-86.)  He retired in 1998 and began receiving disability

28  pension payments.  (*Id.*)

In May 2003, treating pain specialist, Dr. Marko Bodor ordered an MRI of Sample's cervical and lumbar spine. (*Id*. at 196-97.) The cervical MRI revealed that Sample's cervical spine showed C3-4 central disk protrusion and osteophytic ridging with mild central spinal canal stenosis and left neural foraminal stenosis. (*Id*. at 196.) The lumbar MRI revealed that Sample's lumbar spine showed L4-5 mild broad central disk protrusion with bilateral neural foraminal stenosis. (*Id*. at 197.)

After the MRI, Dr. Bodor referred Sample to neurosurgeon Dr. Jay Levy for evaluation of low back pain, leg pain, and left-sided neck pain. (*Id*. at 204.) On May 29, 2003, Dr. Levy opined that the cervical MRI conducted earlier that month, showed a lesion at C3-4, which he determined could be the source of Sample's neck pain and headaches. (*Id*. at 205.) Dr. Levy recommended surgery for the cervical spine. (*Id*. at 206.) Dr. Levy opined that Sample's lumbar spine had degenerative changes, spondylitic disk problems at 4-5 and 5-1, though mostly at 5-1. (*Id*.) Dr. Levy did not recommend surgery for the lumbar spine and instead recommended a series of epidural blocks or a brace, such as an Orthotrac. (*Id*.)

On June 3, 2003, Sample filed an application for disability benefits claiming that he became disabled on March 12, 1999, due to degenerative disk disease of the cervical and lumbar spine . (*Id*. at 73.) The Social Security Administration denied his application. (*Id*. at 25.) On November 10, 2003, Sample filed a timely hearing request and completed a waiver of right to personal appearance form. (*Id*.) On February 14, 2005, an Administrative Law Judge ("ALJ") issued an unfavorable decision affirming the prior determination of non-disability. (*Id*.)

On April 18, 2005, Sample appealed the decision alleging confusion regarding a number of issues including his waiver of right to personal appearance. (*Id*.) On September 2, 2005, the Appeals Council remanded the matter to a different ALJ. (*Id*.) On January 1, 2006, Sample amended his alleged disability onset date from March 12, 1999 to January 1, 2002. (*Id*.) On January 4, 2006, Dr. Bodor completed Sample's cervical/lumbar spine and chronic pain residual functionary capacity questionnaire. (*Id*. at 258-262.) Dr. Bodor opined Sample's cervical and lumbar degenerative disk disease and associated symptoms precluded him from sitting or standing/walking for more than a total of two hours in an eight hour workday. (*Id*. at 260.) He also

1   stated that Sample can only stoop, bend, twist, crouch, or climb on a rare basis.  (*Id.* at 261.)

2   Further, he declared that Sample's experience of pain and other symptoms would interfere with

3   attention and concentration needed to perform even simple work tasks on a constant basis.  (*Id.* at

4   259.)

5          On January 26, 2006, Sample appeared before an ALJ at the remand hearing.  (*Id.* at 26.)

6   The ALJ found that Sample had the following residual functioning capacity: the ability to lift and

7   carry up to 10 pounds frequently and up to 20 pounds rarely, stand and walk up to six hours in an

8   eight hour workday with preclusion from standing or walking more than one hour continuously, sit

9   up to six hours in an eight hour workday with preclusion from bending to the floor and performing

10  any overhead work, and a limitation to occasional (up to 10%) use of the bilateral hands.  (*Id.*)  In

11  making the RFC finding, the ALJ gave little weight to the January 2006 opinion of Dr. Bodor

12  because it was inordinately based upon Sample's subjective complaints, which the ALJ found to be

13  not fully credible.  (*Id.* at 27.)

14         A vocational expert ("VE") testified at the hearing.  (*Id.* at 279.)  The VE testified that

15  Sample's past relevant work as a plumber was skilled and performed at the heavy exertional level.

16  (*Id.* at 329.)  Based on Sample's age, vocational educational background, a light level of exertion, no

17  overhead work, a requirement to only rarely lift up to 20 pounds, no bending to the floor, no

18  standing or walking more than one hour continuously, and disregarding previous work, the VE

19  testified that Sample could perform literally hundreds of thousands of jobs at the light level with

20  these restrictions.  (*Id.* at 330.)  When asked by the ALJ about security jobs, the VE testified that it

21  was a semi-skilled job, but that entry level security guards are basically hired off the street and what

22  they need is someone that has the ability to show up, observe, conduct short interactions with the

23  public, and occasionally use their hands.  (*Id.* at 332, 334.)  The VE also stated that certain criminal

24  offenses may disqualify candidates.  (*Id.* at 332.)  The VE testified that there are about 5,300 entry

25  level security jobs in the Bay Area, and about 325,000 nationally.  (*Id.* at 333.)  However, due to

26  Sample's limitations, the VE reduced the number of security jobs available by 5 or 10 percent.  (*Id.*)

27         On March 28, 2006, the ALJ found that although Sample could not perform past relevant

28  work, he could adapt to other jobs that exist in significant numbers within the national economy and

therefore was not considered disabled. (*Id*. at 30.)  In making this finding, the ALJ relied heavily on the VE's testimony about the types of jobs Sample could perform. (*Id*.)  The Social Security Administration denied Sample's request to review the ALJ's decision (*Id*. at 6.)

On September 17, 2007, Sample commenced this action for judicial review of the ALJ's decision.  Sample argues that the ALJ erred by (1) failing to establish the presence of transferable skills; and (2) improperly relying on the VE's testimony to determine that he could perform other work;

## ANALYSIS

**A.      Standard of Review of Commissioner's Decision to Deny Social Security Benefits.**

A federal district court may not disturb the final decision of the Commissioner unless it is based on legal error or the fact findings are not supported by substantial evidence.  42 U.S.C. § 405(g); *Sprague v. Bowen*, 812 F.2d 1226, 1229 (9th Cir. 1987).  Considering the administrative record as a whole, "[s]ubstantial evidence means more than a mere scintilla, but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995).  To determine whether substantial evidence exists, courts must look to the record as a whole, considering both evidence that supports and undermines the ALJ's findings. *Desrosiers v. Sec'y of Health and Human Servs*., 846 F.2d 573, 576 (9th Cir. 1988).  An ALJ's decision must be upheld, however, if the evidence is susceptible to more than one reasonable interpretation. *Gallant v. Heckler*, 753 F.2d 1450, 1453 (9th Cir. 1984).

**B.      Legal Standard for Establishing a Prima Facie Case for Disability.**

The plaintiff has the burden of establishing a prima facie case for disability. *Id*. at 1452.  The disability assessment by the Commissioner follows a five-step sequential evaluation to determine whether a person is disabled. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. § 416.920.  When applying this review, "the burden on proof is on the claimant at steps one through four, but shifts to the Commissioner at step five." *Bray v. Comm'r of Soc. Sec.*, 554 F.3d 1219, 1222 (9th Cir. 2009); *see Tackett v. Apfel*, 180 F.3d 1094, 1099 (9th Cir. 1999).  At the first step, the claimant must not be working.  20 C.F.R. § 416.920(b).  Second, the claimant's impairment must be "severe."  20

C.F.R. § 416.920(c).  Third, when the claimant has an impairment that meets the duration required and is listed in Appendix 1 (a list of impairments presumed severe enough to preclude work located in Subpart P of Part 404 of 20 C.F.R. § 416.920), or is equal to a listed impairment, benefits are awarded without considering the claimant's age, education, and work experience.  20 C.F.R. § 416.920(d).  Fourth, if the claimant's impairments do not meet or equal a listed impairment, the Commissioner assess the claimant's residual functional capacity to determine if the claimant can perform past work.  20 C.F.R. § 416.920(e).  Benefits are denied if the claimant can do past work. *Id*.  At step five, the burden switches to the Commissioner to demonstrate that if the impairment prevents the claimant from doing past relevant work, the claimant's age, education, work experience, and residual functional capacity are considered to see if the claimant is capable of performing other work that exists in the national economy.  *See Bray*, 554 F.3d at 1222-23; *see also* 20 C.F.R. § 416.920(g).  The claimant is not entitled to benefits if the claimant can adjust to other work.  20 C.F.R. § 416.920(g).

In this matter, the ALJ used the five-step analysis to determine that: (1) Sample was not working; (2) his degenerative disk disease of the cervical and lumbar spines constituted "severe" impairments; but (3) his impairments did not meet or equal any listed impairment; (4) he was unable to perform past work; but (5) he had the residual functional capacity to perform a significant range of light work jobs that exist in significant numbers in the national economy, namely a security guard.  (AR at 29-30.)  Therefore, the ALJ concluded that Sample was not disabled.  (*Id*. at 30.)

**C.    The ALJ's Determination That Sample Is Not Disabled Is Not Supported by Substantial Evidence and Is Not Free of Legal Error.**

**1.    The ALJ Failed to Properly Establish Sample's Transferable Skills**.

Sample argues that the ALJ did not meet his burden at step five of the disability analysis based on his failure to establish the presence of transferable skills from his previous relevant work as a plumber to a potential occupation as a security guard.  At step five of the disability analysis, the ALJ assesses residual functional capacity, age, education, and work experience to determine if an adjustment can be made to do other work.  20 C.F.R. 404.1520(a)(4)(v).  The ALJ has the burden to provide evidence that demonstrates that other work exists in significant numbers in the national

1   economy that can be done given a worker's residual functional capacity and vocational factors.  *See*

2   *Bray*, 554 F.3d at 1223; *see also* 20 C.F.R. 404.1560(c)(2).

3       At step five, work experience is defined as "skills and abilities you have acquired through

4   work you have done which show the type of work you may be expected to do."  20 C.F.R.

5   404.1565(a).  The ALJ is required to determine the transferability of these skills "when an

6   individual's impairment(s), though severe, does not meet or equal the criteria in the Listing of

7   Impairments in Appendix 1 of the regulations but does prevent the performance of past relevant

8   work ("PRW"), and that work has been determined to be skilled or semiskilled."  Social Security

9   Ruling 82-41[1] ("SSR 82-41"), 1982 SSR LEXIS 34, at *3 (1982).

10      Transferability is defined as "applying work skills which a person has demonstrated in

11   vocationally relevant past jobs to meet the requirements of other skilled or semiskilled jobs."  SSR

12   82-41, 1982 SSR LEXIS 34 at *5; *see also* 20 C.F.R. 404.1568(d)(1).  When the ALJ is determining

13   skills to be transferred to other jobs, transferability is most probable and meaningful among jobs in

14   which "(i) the same or a lesser degree of skill is required; (ii) the same or similar tools and machines

15   are used; and (iii) the same or similar raw materials, products, processes, or services are involved."

16   20 C.F.R. 404.1568(d)(2)(i-iii).  When determining transferability, an ALJ must also consider all

17   exertional and limitations included in the residual functioning capacity.  SSR 82-41, 1982 SSR

18   LEXIS 34, at *13.  Lastly, when examining the issue of skills and determining their transferability,

19   an ALJ "is required to make certain findings of fact and include them in the written decision."  *Id.* at

20   *19.  When the ALJ makes a finding of fact that a claimant has transferable skills, "the acquired

21   work skills must be identified, and specific occupations to which the acquired work skills are

22   transferable must be cited in the State agency's determination or ALJ's decision."  *Id.*;  *see Bray*,

23   554 F.3d at 1226 (requiring remand due to ALJ's failure to make findings regarding the

24   transferability of acquired work skills was dispositive);  *Adame v. Apfel*, 2002 U.S. Dist. LEXIS

25   1980, at *21 (N.D. Cal.  Jan. 31, 2002) (holding that if an ALJ does not specifically identify which

26   _____

27       [1]  Social Security Rulings are binding on all components of the Social Security Administration.
    They do not carry the "'force of law,' but they are binding on ALJs nonetheless."  *Bray*, 554 F.3d at
28   1224.

1    skills are transferable then the skills must be identified on remand).

2          Here, the ALJ's determination of Sample's residual functional capacity, age, and education is

3    not disputed.[2]  Because the ALJ determined that Sample's severe impairments of degenerative disk

4    disease of the cervical and lumbar spines did not meet or equal any listed impairment, and the VE

5    testified that Sample could no longer perform his skilled past relevant work as a plumber, the ALJ

6    proceeded to determine the transferability of Sample's skills.[3]  (AR at 26, 28.)  Here, the ALJ heard

7    testimony from a VE who testified that Sample's former work as a plumber is considered "heavy" in

8    its exertional demands and a "skilled" position with a special vocational preparation ("SVP") time of

9    "7."  (AR at 329.)  The VE also testified that Sample had acquired the following skills: utilization of

10   hand and power tools in the plumbing trade, supervision of work, layout and ordering of materials,

11   documentation, organization, and/or planning of jobs.  (*Id*.)  When asked if there were other jobs that

12   a hypothetical individual of Sample's limitations and skills set could perform, the VE stated that

13   Sample could perform the job of security guard.  (*Id*. at 332-33.)  The VE testified that the job of

14   security guard is a semi-skilled job with a  SVP of "3," considered "light" in its exertional demands,

15   and is a job mostly requiring observation powers with possible short interactions with the public.

16   (*Id*. at 332.)

17         The ALJ, in deciding Sample's skills were transferable, heavily relied upon the testimony of

18   the VE.  (*Id*. at 29.)  The totality of the VE's testimony regarding transferability was as follows:

19         Q.    What about security kind of job?

20         A.    I think security would work here, you know, they're not necessarily jobs that
               are going to require any kind of bending to floor level, unless of course you
21             drop something.  The DOT code on it is 742.667-030 and the jobs are
               considered a three and light and that's a more postural (*sic*) than it is related to
22             weight.

23         Q.    Okay.  You say three, so that's semi-skilled, could someone–

24

25         _____

           [2]  However, Sample is now 57 years old, and on remand the ALJ should consider Sample in the
26   55-60 category for the purpose of determining whether he is disabled.  *Bray,* 554 F.3d at 1229; *see also*
     *Moore v. Apfel*, 215 F.3d 864, 868 (9th Cir. 2000) (noting that ALJ adjusted age category determination
27   on remand because claimant's age had advanced).

28         [3]  Although the VE testified that Sample's past work was skilled, the ALJ stated the VE testified
     that Sample's past work was semi-skilled.

1       A.     That's semi-skilled, you know–

2       Q.     – with a background of Mr. Sample?

3       A.     I wouldn't have a problem with that.  I mean generally speaking when you're
4                hiring, I mean, they say three and light, but entry level security guards are
               basically hired right off the street and what they need is someone that has the
5                ability to show up and generally speaking, certain criminal offenses would
               need to be eliminated, but –

6       Q.     Right.

7       A.     – it's mostly about powers of observation.  There may be short interactions
               with the public, you know, if they're a gate guard.

8 (AR at 332.)

9      The VE never discussed how Sample's skills as a plumber, which includes utilization of

10 hand and power tools in the plumbing trade, and supervision of work, would be transferable to the

11 skills necessary to perform work as a security guard.  Although the VE stated in his testimony the

12 exact Dictionary of Occupational Titles ("DOT") Work Fields of a plumber and a security guard, he

13 did not testify regarding whether these Work Fields are compatible and contain transferable skills.

14 (AR at 329, 332.)  The VE did not specifically testify as to, and the ALJ did not state whether: (i)

15 being a security guard requires the same or a lesser degree of skill; (ii) plumbers and security guards

16 use the same or similar tools and machines; and (iii) these two occupations involve the same or

17 similar raw materials, products, processes, or services.  *See* 20 C.F.R. 404.1568(d)(2)(i-iii).  Instead,

18 the ALJ heavily relied on the VE's testimony that "people are hired off the street to perform this

19 job," to determine that Sample had transferable skills in which he could perform the job of security

20 guard.  (AR at 29.)  By failing to specifically identify skills that are transferable, the ALJ failed to

21 meet his burden at Step Five in the disability analysis.  *See Bray* 554 F.3d at 1226; *see also*

22 SSR 82-41, 1982 SSR LEXIS 34, at *13.

23      The Commissioner argues that the ALJ properly considered the issue of transferability

24 because the VE gave a reasonable explanation for his variance from the DOT.  However, SSR 00-4p,

25 states that "'when a [vocational expert] . . . provides evidence about the requirements of a job or

26 occupation the adjudicator has an *affirmative responsibility* to ask about any possible conflict

27 between that [vocational expert] . . . evidence and information provided in the [Dictionary of

28 Occupational Titles].'"  *Massachi v. Astrue*, 486 F.3d 1149, 1152-53 (9th Cir. 2007) (emphasis

1   added) (*quoting* SSR 00-4p, 65 Fed. Reg. 75759, at *75760 (2000)).  Although the VE and DOT

2   evidence "generally should be consistent," when there is a conflict, neither the evidence supplied by

3   the VE nor the DOT automatically trumps.  *Massachi*, 486 F.3d at 1153.  Thus, "the ALJ must first

4   determine whether a conflict exists."  *Massachi*, 486 F.3d at 1153.  If the ALJ determines that a

5   conflict exists then "the ALJ must then determine whether the vocational expert's explanation for

6   the conflict is reasonable and whether a basis exists for relying on the expert rather than the

7   Dictionary of Occupational Titles."  *Id*.  Finally, the ALJ "will explain in the determination or

8   decision how he or she resolved the conflict."  SSR 00-4p, 65 Fed. Reg. at *75760; *see also Garnica*

9   *v. Astrue*, 238 Fed. Appx. 254, 255 (9th Cir. 2007).

10        Here, the ALJ did not perform the appropriate inquiries under SSR 00-4p.  The ALJ never

11   affirmatively asked the VE whether his testimony conflicted with the DOT, and if so, whether a

12   reasonable explanation for the conflict existed.  The ALJ's finding relied on testimony from the VE

13   about the requirements of a security guard job.  The VE testified that "although the Dictionary of

14   Occupational Titles (D.O.T.) considers this job to be semiskilled . . . in fact, people are often hired

15   off the street to perform this job."  (AR. at 29.)  The ALJ failed to determine the reasonableness of

16   the VE's explanation and whether a basis existed for relying on the expert rather than the DOT.

17   Further, the ALJ did not explain in his finding how he resolved the conflict between the VE and the

18   DOT.

19        The Commissioner also argues that the ALJ's decision is consistent with the Medical-

20   Vocational Guidelines and that therefore, the decision should be upheld.  However, the ALJ never

21   applied the  Medical-Vocational Guidelines to determine Sample's disability status.  It is unclear if

22   the Medical-Vocational Guidelines would apply to Sample because generally when, as here, a

23   claimant suffers from both exertional and non-exertional limitations, the grids are only a framework

24   and a VE must be consulted.  *Moore v. Apfel*, 216 F.3d 864, 870 (9th Cir. 2000).  Because the ALJ

25   did not apply the Medical-Vocational Guidelines, the Commissioner's argument is misplaced.

26        Therefore, the Court finds that there is not substantial evidence to support the ALJ's findings

27   that Sample is not disabled.  The Court directs the ALJ on remand to make specific findings on

28   whether Sample has transferable skills.  Further, to the extent the ALJ relies on VE testimony that

1   conflicts with the DOT, the ALJ must follow SSR 00-4p to support his findings.

2

3            **2.      The ALJ Posed A Proper Hypothetical Question to the VE.**

4            Sample argues that the ALJ did not pose a complete and accurate hypothetical question to the

5   VE because it did not match the ALJ's RFC finding for Sample.  Sample asserts that the ALJ failed

6   to include in the hypothetical that Sample is also limited to only standing and walking up to six

7   hours in an eight hour workday.  When a hypothetical question is posed to a VE, it "must set out all

8   the limitations and restrictions of the particular claimant, including, for example, pain and an

9   inability to lift certain weights."  *Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988).  If the

10  hypothetical does not reflect all of the claimant's limitations, "the expert's opinion has no

11  evidentiary value and cannot support the ALJ's decision."  *Id*. at 423.

12           The ALJ asked the VE to consider a hypothetical involving an individual of Sample's age,

13  vocational educational background, a light level of exertion, no overhead work, a requirement to

14  only rarely lift up to 20 pounds, no bending to the floor, no standing or walking more than one hour

15  continuously, and disregarding previous work.  (AR at 330.)  The limitation of light work

16  encompasses "standing or walking, off and on, for a total of *approximately* 6 hours of an 8-hour

17  workday."  Social Security Ruling 83-10 ("SSR 83-10") 1983 SSR LEXIS 30, at *14 (1983)

18  (emphasis added).  During the VE's testimony, Sample's attorney properly added the restriction of

19  limiting bilateral reaching to no more than 10 percent of the workday.  (*Id.* at 336.)

20           Here, Sample argues that his RFC is limited *up to* 6 hours of an 8-hour workday.  (AR at 330

21  (emphasis added).)  Sample asserts that the ALJ's hypothetical could be construed to include jobs

22  that include standing or walking, off and on, for more than 6 hours of an 8-hour workday.  Although

23  the Court finds that the distinction between "approximately 6 hours" and "up to 6 hours" may not

24  independently warrant remanding this case, upon remand, the Court directs the ALJ to clarify

25  Sample's exact limitations in any hypothetical.

26                                  **CONCLUSION**

27           For the foregoing reasons, the Court hereby GRANTS Sample's Motion for Summary

28  Judgment, REMANDS this case, and DENIES Commissioner's Cross-Motion for Summary

1   ///

2   ///

3   Judgment.  This matter is HEREBY REMANDED to the Social Security Administration for

4   consideration of whether Sample has skills transferable to another job.

5

6           **IT IS SO ORDERED.**

7

8   Dated: March 30, 2009

                                                    JEFFREY S. WHITE
                                                    UNITED STATES DISTRICT JUDGE

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28